UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CATRENA L. LANDING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:23-CV-144-ACL |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM**

Plaintiff Catrena L. Landing brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite her severe impairments, Landing was not disabled because she could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Landing filed her application for DIB on May 5, 2021, and for SSI on May 7, 2021. (Tr.

92, 99.)   She claimed she became unable to work due to her disabling impairments on January 1, 1996, but later amended her alleged onset date to October 6, 2017.   (Tr. 35.)   Landing alleged disability due to anxiety, bipolar disorder, depression, and schizophrenia.   (Tr. 283.)   She was 32 years of age at her amended alleged onset of disability date.   (Tr. 48.)   Landing's applications were denied initially and on reconsideration.   (Tr. 131-50, 166-76.)   On October 13, 2022, after holding a hearing, an ALJ denied Landing's applications.   (Tr. 35-50.)   On June 29, 2023, the Appeals Council denied Landing's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Landing argues that the ALJ "failed to reconcile conflicts between the assessed RFC and the medical opinion of Dr. Toll that he found persuasive."   (Doc. 12 at 5.)

## II.   The ALJ's Determination

The ALJ first found that Landing met the insured status requirements of the Social Security Act through March 31, 2018.   (Tr. 37.)   He stated that Landing has not engaged in substantial gainful activity since October 6, 2017, her amended alleged onset date.   *Id.*   In addition, the ALJ concluded that Landing had the following severe impairments: bipolar disorder, schizophrenia, major depressive disorder, generalized anxiety disorder, borderline personality disorder, and learning disorder.   (Tr. 38.)   The ALJ found that Landing did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 39.)

As to Landing's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

> perform a full range of work at all exertional levels but with the following nonexertional limitations. She can perform only simple, routine and repetitive tasks requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with supervisors, coworkers and the general public.

(Tr. 43.)

The ALJ found that Landing was capable of performing jobs existing in significant numbers in the national economy, such as binding printer, laundry worker, and tumbler operator. (Tr. 49.) The ALJ therefore concluded that Landing was not disabled. (Tr. 50.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 5, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on May 7, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III.   Applicable Law

**III.A.   Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

In her sole claim, Landing argues that the ALJ failed to properly evaluate the opinion of the state agency psychological consultant, Marsha Toll, Psy.D. She contends that the ALJ

found this opinion to be "persuasive," yet failed to reconcile Dr. Toll's conclusions with the assessed RFC. As a result, she argues that the RFC was not supported by substantial evidence.

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c and 416.920c. Under these regulations, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors ... in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The Regulations provide as follows regarding supportability: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the Regulations provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)); *see also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). An ALJ need not explain in his or her decision how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

On November 23, 2021, Dr. Toll evaluated Landing's mental functioning upon reconsideration of her disability claim. (Tr. 112-16.) Dr. Toll summarized the medical and other evidence regarding Landing's mental impairments. (Tr. 112-13.) Dr. Toll found that Landing had moderate limitations in many areas, and was markedly limited in the ability to carry out detailed instructions. (Tr. 114-15.) She expressed the opinion that Landing can understand, remember, and carry out simple instructions, can make commensurate work-related decisions, and can sustain concentration, persistence, and pace on tasks at that level. (Tr. 115.) Dr. Toll stated that Landing "will be best suited for a job in which she can work independently with minimal interaction with the general public, coworker, and supervisors," and that she can "adapt to changes that are predictable and introduced gradually." *Id.*

The ALJ set out Dr. Toll's findings and concluded they were "persuasive" for the following reasons:

> They are supported by Dr. Toll's analysis of the evidence available when her conclusions were made, and importantly, such limitations are consistent with the totality of the evidence—including some exacerbations of mental health symptoms which led the claimant to seek out emergency care (Exhibit 12F), taken into consideration with the numerous nearly normal mental status examination

Page 10 of 15

results recorded by the claimant's behavioral healthcare providers over a significant period with many appointments (Exhibits 3F; 5F; 7F; 14F).

(Tr. 47.)

Landing does not challenge the ALJ's supportability or consistency analysis, nor does she challenge the ALJ's determination that Dr. Toll's opinions were "persuasive." Instead, Landing's sole, narrow claim is that the ALJ erred in failing to incorporate Dr. Toll's "persuasive" findings in his RFC determination.

The ALJ determined Landing had the mental RFC to perform "simple, routine and repetitive tasks requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with supervisors, coworkers, and the general public." (Tr. 43.)

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

Landing contends that, despite crediting Dr. Toll's opinion, the RFC formulated by the ALJ failed to incorporate the following "two key limitations" found by Dr. Toll: (1) Landing was

"best suited for a job in which she can work independently with minimal interaction with the general public, coworkers, and supervisors"; and (2) Landing was only capable of adapting to changes in the work setting that are "predictable and introduced gradually."  (Doc. 12 at 5.) Landing argues that Social Security Ruling 96-8p requires that the ALJ "explain why [an] opinion was not adopted" if an RFC conflicts with a persuasive medical opinion.  Because the ALJ did not explain the discrepancy, Landing contends that remand is required to resolve the conflict.

Social Security Ruling 96-8p requires that in assessing the RFC, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  Soc. Sec. Admin., Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Id.*

Landing relies upon *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), in support of her claim that the ALJ's failure to include Dr. Toll's exact description of Landing's limitations requires remand.  In *Gann*, the plaintiff's doctors found that her ability to adapt to a work environment was "highly marginal."  *Id.* at 952–53.  The ALJ found the doctors "credible" and gave "significant weight" to their opinions,[1] but the RFC "failed to include *anything* about adaptation restrictions in the RFC assessment in the hypothetical posed to the VE…"  *Id.* at 952.

---

[1] For claims filed before March 27, 2017, when an ALJ found a medical professional "credible" or their opinion entitled to "significant weight" under 20 C.F.R. §§ 404.1527 or 416.927, the RFC had to reflect the limitations described in the opinion. *See Gann*, 864 F.3d at 952–53.

Page **12** of **15**

(emphasis added).  As a result, the vocational expert's testimony given in response to the hypothetical question based on the RFC was not substantial evidence.  *Id.*

Unlike in *Gann*, where the ALJ completely omitted any adapting restrictions in the RFC, the ALJ in this case included limitations to account for all of Dr. Toll's findings.  The ALJ incorporated Dr. Toll's finding that Landing was "best suited" for a job in which she could work independently with "minimal" interaction with the general public, coworkers, and supervisors by limiting her to "no more than occasional interaction with supervisors, coworkers, and the general public."  (Tr. 43.)  As Defendant points out, "occasionally" means the activity or condition exists up to 1/3 of the time and may exist even less than 1/3 of the time.  *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702.  The Court perceives no inconsistency between Dr. Toll's opinion recommending "minimal" interaction and the ALJ's limitation to "occasional" interaction.  Similarly, the ALJ appropriately accounted for Dr. Toll's adapting limitation of changes that are "predictable and introduced gradually" by including a limitation to simple work "with few changes in the routine work setting."  (Tr. 43.)

Recent decisions in this Court have considered claims nearly identical to Landings' and found that a difference in the wording in the RFC and a medical opinion's wording does not necessarily constitute error.  In *Deck v. Kijakazi*, Case No. 1:22CV8 SNLJ, 2022 WL 13688874 at *4 (E.D. Mo. Oct. 21, 2022), the plaintiff argued that the ALJ erred in failing to incorporate two consultative opinions indicating he should be limited to changes in the workplace that are "predictable and introduced gradually"—the identical language used by Dr. Toll in the instant case.  The ALJ in *Deck* limited the claimant to perform only "routine tasks" and "limited to work that requires only occasional changes in the work setting."  *Id.*  The Court[2] found "the

---

[2] Senior United States District Judge Stephen N. Limbaugh, Jr.

Page 13 of 15

ALJ properly incorporated the medical opinions' recommendations into the RFC" because the limitation in the RFC was "essentially the same" as the one recommended in the medical opinions. *Id.* The plaintiff had "failed to define any meaningful difference between the two." *Id. See also McFarland v. Kijakazi*, Case No. 4:23CV1147 SRW, 2023 WL 6381424, at *6 (E.D. Mo. Sept. 29, 2023) (relying on *Deck* to find ALJ's RFC adequately incorporated "predictable and introduced gradually" limitation in medical opinion despite using different language); *Beyes v. Kijakazi*, Case No. 4:22CV614 SRW, 2023 WL 1765185, at *8 ("A gradual change while performing simple, routine tasks does not appear to be practically different from a minimal change while performing simple, routine tasks").

The Court finds the reasoning in *Deck* persuasive and concludes that *Gann* is distinguishable from the instant case. The difference in "no more than occasional" interaction and "minimal" interaction; as well as the difference between "few changes" to simple, routine work and changes that are "predictable and introduced gradually" is not comparable to the error in *Gann*. Moreover, the Court's deferential standard of review precludes "labeling findings inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018).

After evaluating the medical opinion evidence, the ALJ offered the following explanation for his RFC finding:

> Given her moderate limitations in understanding, remembering, and applying information, in concentrating, persisting, and maintaining pace, in adapting and managing herself, she can perform only simple, routine, and repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting. Additionally, due to her moderate limitation in interacting with others, she can tolerate no more than occasional interaction with supervisors, coworkers, and the general public.
> Based on the entire record, including but not limited to the mostly normal mental status examination results recorded by the claimant's behavioral healthcare providers (Exhibits 3F; 5F; 7F; 14F), the lack of objective evidence to

support her allegations (including frequent crying spells and panic attacks), and her ability to participate in many typical activities of daily living—such as working part-time as discussed above, the undersigned concluded the evidence fails to support the claimant's assertions of total disability.   Despite evidence demonstrating medically determinable "severe" impairments, the evidence further establishes the claimant retains the capacity to function adequately to perform many basic activities associated with work.   In conclusion, the claimant does experience some limitations, but only to the extent described in the residual functional capacity above.

(Tr. 48.)

The undersigned finds that the RFC determination is supported by substantial evidence on the record as a whole.   The assessed limitations are equivalent to those set out in Dr. Toll's persuasive opinion and the Court finds no "meaningful difference between the two."   *Deck*, 2022 WL 13688874 at *4.   "Even if the ALJ could have gone into greater detail, the ALJ is free to accept some, but not all, of a medical opinion."   *Abraham v. Kijakazi*, Case No. 1:22CV152 SNLJ, 2023 WL 3948816, at *5 (E.D. Mo. June 12, 2023).   The ALJ considered Landing's ongoing complaints of mental health symptoms when restricting her to a very limited range of simple work.   The ALJ also considered Landing's statements regarding her daily activities—most notably her ability to work part-time despite her impairments—when making his determination.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2024.